UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.   Case No. 8:24-cr-564-KKM-TGW

DANIEL LIBURDI, JOSEPH SCOTTO,
GREGORY WALKER, and FRANK
CARBONE, III,

    Defendants.
_____

## ORDER

    A federal grand jury indicted Daniel Liburdi, Joseph Scotto, Gregory Walker, and Frank Carbone, III, for conspiracy to commit bank fraud (Count 1) and conspiracy to commit money laundering (Count 4). Indictment (Doc. 1) ¶¶ 1–29, 38–40. It also charged both Liburdi and Carbone with bank fraud. *See id.* ¶¶ 30–33 (Count 2); *id.* ¶¶ 34–37 (Count 3—against Liburdi alone). Liburdi and Carbone separately move to dismiss the indictment, Carbone MTD (Doc. 62); First Liburdi MTD (Doc. 65), and Liburdi moves to dismiss or strike the indictment's forfeiture allegations, Second Liburdi MTD (Doc. 66). Both Liburdi and Carbone also move for bills of particulars. Carbone Mot. for BOP (Doc. 63); Liburdi Mot. for BOP (Doc. 67). The United States opposes all these motions. For the reasons below, the

motions to dismiss are denied, and the motions for bills of particulars are denied without prejudice.

## I. BACKGROUND

This case involves an alleged conspiracy to fraudulently obtain merchant accounts from banks and process high-risk credit card transactions. As alleged, Daniel Liburdi conspired with uncharged co-conspirator Morris Goldstein to develop a scheme to engage in high-risk billing practices while minimizing the risks of engaging in those practices. Indictment ¶ 27. And Joseph Scotto, Gregory Walker, and Frank Carbone, III, each joined, supported, and advanced that conspiracy. *Id.* ¶¶ 27–28.

To understand the alleged conspiracy, some background on card transactions is helpful. To process a card payment in the United States, a merchant must have a merchant account with an acquiring bank. *Id.* ¶ 23; *see also id.* ¶ 16 ("An 'Acquiring Bank' [is] a federally insured or chartered financial institution located within the United States which [is] involved in the provisioning of financial accounts for merchants."). Acquiring banks contract with card payment networks (e.g., VISA), and those networks hold the acquiring bank responsible when a charge is "disputed,

2

cancelled, or otherwise refunded." *Id.* ¶ 24. In turn, acquiring banks look to their merchants to indemnify them for chargebacks and refund-related losses. *Id.*

Merchants whose transactions result in a lot of chargebacks or other losses are considered "high[ ]risk." *Id.* ¶ 19. As relevant here, two practices are likely to land a merchant in the "high risk" category—negative-option marketing and card rebilling. Broadly, negative-option marketing is a kind of sales technique "in which sellers interpreted a customer's failure to take an affirmative action, such as rejecting an offer, or failing to cancel during a trial period, as an assent by the customer to be further charged for goods or services." *Id.* ¶ 20. Card rebilling generally refers to a technique in which "a seller periodically charged a customer's card, with or without providing additional goods or services." *Id.* ¶ 21. Merchants that practice high-risk charging techniques run the risk of accumulating many chargebacks or refunds and, as a result, being terminated by their acquiring banks. *Id.* ¶ 26. If a bank terminates a merchant for being high risk, the bank may refer the merchant for placement on the " 'Mastercard Alert to Control High-Risk [Merchants]' or 'MATCH' list." *Id.* ¶¶ 22, 26. Placement on the MATCH list makes it difficult for a merchant to "obtain merchant processing services from other financial institutions in the future." *Id.* ¶ 22.

3

The grand jury alleges that, from about May 2018 to May 2023, the conspirators here sought to avoid the negative consequences of engaging in high-risk transactions "by fraudulently establishing merchant accounts for entities they controlled in the name of ['independent business owners'] . . . by false pretenses to Acquiring Banks." *Id.* ¶¶ 27, 28. As alleged in the indictment, the conspirators recruited people (whom they called "independent business owners," *id.* ¶ 15) to provide personal identifying information and then used that information to establish shell companies. *Id.* ¶ 29a–b. The conspirators would then attempt "to make the shell companies appear legitimate, including by establishing email addresses and product sale websites for the shell companies, obtaining Employer Identification Numbers for the shell companies, and opening and causing to be opened business bank accounts in the names of the shell companies." *Id.* ¶¶ 29c, f. After organizing the shell companies, the conspirators made fraudulent misrepresentations in their applications for merchant processing accounts for the shell companies, including by "misrepresenting the beneficial ownership information of the shell company to hide the control and benefit of the conspirators" and "stating there were no other currently[ or ]previously owned businesses associated with the . . . applicant." *Id.* ¶ 29e. Through these misrepresentations, the conspirators were able to conceal their

efforts to engage in high-risk billing practices that might otherwise have resulted in the denial of their applications. *See id.* ¶ 27. The grand jury charges all four defendants as participants in the conspiracy. *Id.* ¶ 28.

The indictment also charges two substantive counts of bank fraud. *See id.* ¶¶ 30–37; *see also* 18 U.S.C. § 1344. Count II alleges that around April 26, 2022, Liburdi and Carbone submitted "an application on behalf of Swipe Wyre containing materially false representations" to fraudulently "obtain a merchant account provided by West Town Bank and Trust." Indictment ¶ 33. Count III alleges that around October 11, 2019, Liburdi submitted "an application on behalf of Quick Body Nutra, LLC containing materially false representations to" fraudulently "obtain a merchant account provided by Fifth Third Bank, N.A." *Id.* ¶ 37. For both substantive counts, the indictment alleges that the goal was "to obtain moneys, funds, credits, assets, and other property owned by, and under the custody and control of one or more financial institutions." *Id.* ¶¶ 31, 35.

Last, the conspirators allegedly conspired to launder money obtained through their bank fraud to promote further fraud. *Id.* ¶¶ 38–40 (Count IV); *see* 18 U.S.C. § 1956(a)(1)(A)(i), (h). In particular, the conspirators allegedly used the funds for "the placement of internet advertisements intended to bring customers to websites

controlled by the conspirators and others for purposes of obtaining additional proceeds from the sale of goods, processed through the fraudulent merchant accounts." Indictment ¶ 40c.

The United States seeks forfeiture of at least $128,144,908.66 in assets related to the offense, as well as four parcels of real estate—three in Miami Beach, and one in the United States Virgin Islands. Indictment (Forfeiture) ¶¶ 1–5.

Defendants Liburdi and Carbone move separately to dismiss the indictment, and Liburdi moves to strike the forfeiture allegations. In the alternative, Liburdi and Carbone both move for a bill of particulars.

## II. LEGAL STANDARD

### A. Indictments

An indictment is "a plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1). An "indictment is sufficient if it '(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.'" *United States v.*

*Woodruff*, 296 F.3d 1041, 1046 (11th Cir. 2002) (quoting *United States v. Steele*, 178 F.3d 1230, 1233–34 (11th Cir. 1999)).

A defendant may move to dismiss an indictment that fails to state an offense. *See* FED. R. CRIM. P. 12(b)(3)(B)(v). "In judging the sufficiency of the indictment, the court must look to the allegations and, taking the allegations to be true, determine whether a criminal offense has been stated." *United States v. Fitapelli*, 786 F.2d 1461, 1463 (11th Cir. 1986). An indictment states an offense when it "allege[s] each of the elements of the statute." *United States v. Plummer*, 221 F.3d 1298, 1302 (11th Cir. 2000). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *Hamling v. United States*, 418 U.S. 87, 117 (1974) (quoting *United States v. Carll*, 105 U.S. 611, 612 (1881)).

An indictment's sufficiency "is determined from its face," without consideration of other evidence. *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992) (per curiam). In other words, a court may not dismiss an indictment "on a determination of facts that should have been developed at trial." *United States v.*

7

*Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987). Courts view the indictment in the light most favorable to the government. *See United States v. Sharpe*, 438 F.3d 1257, 1264 (11th Cir. 2006).

An indictment must also set out separate offenses in separate counts. FED. R. CRIM. P. 8(a); *see id.* 12(b)(3)(B)(i). Under Rule 8, "[a] count in an indictment is duplicitous if it charges two or more separate and distinct offenses." *United States v. Seher*, 562 F.3d 1344, 1360 (11th Cir. 2009) (quoting *United States v. Schlei*, 122 F.3d 944, 977 (11th Cir. 1997)). In a duplicity challenge, "the key issue to be determined is what conduct constitutes a single offense." *Schlei*, 122 F.3d at 977.

### B. Bills of Particulars

Federal Rule of Criminal Procedure 7(f) permits a defendant to move for a bill of particulars, which if properly granted, "supplements an indictment by providing the defendant with information necessary for trial preparation." *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) (emphasis omitted). A true bill of particulars serves to notify the defendant of the charges so that he can prepare a defense, to minimize surprise at trial, and to enable him to plead double jeopardy. *E.g.*, *id.* at 1441. As such, a defendant is not "entitled to a bill of particulars where the information sought has already been provided by other sources, such as

the indictment and discovery." *United States v. Davis*, 854 F.3d 1276, 1293 (11th Cir. 2017).

## III. ANALYSIS

Liburdi and Carbone each move to dismiss the indictment, and Liburdi also moves to dismiss or strike the forfeiture allegations. They also each seek a bill of particulars. As explained below, neither defendant identifies a deficiency requiring the indictment's dismissal, and Liburdi's arguments fail to show any infirmity in the forfeiture allegation. Both defendants' requests for bills of particulars are defective and, in any event, premature.

### A. Carbone's MTD

Carbone argues that the indictment must be dismissed because it "fails to allege a scheme to defraud a bank," does not explain how Carbone participated in a bank-fraud scheme, and fails to allege venue. Carbone MTD at 6. All these arguments fail.

To start, the indictment adequately alleges both conspiracy to commit bank fraud and substantive bank fraud. Carbone argues that "the government fails to allege that the defendants engaged in a scheme to defraud or that they acted with an 'intent to defraud' a financial institution." *Id.* at 7. Yet the indictment does precisely

9

that. The indictment charges that "the defendants, [Liburdi, Scotto, Walker, and Carbone], did knowingly and voluntarily combine, conspire, confederate, and agree with others . . . to execute and attempt to execute a scheme or artifice to defraud a financial institution." Indictment ¶ 28. This allegation tracks the language of the statute, *see* 18 U.S.C. §§ 1344, 1349, and is sufficient to charge a conspiracy to commit bank fraud. *See Critzer*, 951 F.2d at 307 ("The indictment is sufficient if it charges in the language of the statute."). The substantive bank fraud count against Carbone likewise tracks the language of the statute. *See* Indictment ¶ 31 (Count II); 18 U.S.C. § 1344.

The indictment also puts Carbone on notice of his alleged involvement in the crime and provides enough factual detail to inform him of the offense of which he is charged. *See United States v. Gbenedio*, 95 F.4th 1319, 1328 (11th Cir. 2024) ("When an indictment describes the offense using statutory language, it must also include enough facts and circumstances to inform the accused of the specific offense with which he is charged." (cleaned up) (quoting *United States v. Bobo*, 344 F.3d 1076, 1083 (11th Cir. 2003))). Viewing the indictment in the light most favorable to the government, it alleges that Carbone participated in the bank fraud conspiracy by allowing his personal identifying information to be used in fraudulent applications

10

for merchant accounts. Indictment ¶ 27. And the indictment alleges that he committed bank fraud around April 26, 2022, "by submitting an application on behalf of Swipe Wyre containing materially false representations to West Town Payments LLC, to obtain a merchant account provided by West Town Bank and Trust." *Id.* ¶¶ 31, 33. These allegations are sufficient to put Carbone on notice of the charges against him and allow him to raise a double-jeopardy defense to a future prosecution.

To the extent that Carbone contends that the facts alleged in the indictment are insufficient to support a conviction on the offenses charged, his argument is misplaced. A motion to dismiss an indictment is not a vehicle that allows a court "to grant a pre-trial judgment as a matter of law on the merits," *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004) (per curiam), and it is unnecessary "for an indictment to allege in detail the factual proof that will be relied upon to support the charges," *Sharpe*, 438 F.3d at 1263 n.3 (cleaned up) (quoting *United States v. Crippen*, 579 F.2d 340, 342 (5th Cir. 1978)). A motion under Federal Rule of Criminal Procedure 29, not a motion under Rule 12, is the proper vehicle for challenging the legal sufficiency of the government's evidence. *Salman*, 378 F.3d at 1268.

Carbone argues that the money laundering count should be dismissed because the indictment fails to allege that he committed bank fraud, which is the "specified unlawful activity" on which the money laundering count is predicated. Carbone MTD at 9–10; *see* 18 U.S.C. § 1956(a)(1)(A)(i). Because I conclude that the indictment properly alleges bank fraud, this argument fails.

As for venue, the government's allegations are sufficient. Each count as to Carbone alleges that the charged conduct "occurred in the Middle District of Florida and elsewhere." Indictment ¶¶ 28, 31, 39. No more is required. *See United States v. Snipes*, 611 F.3d 855, 866 (11th Cir. 2010) (holding that identification of "the location of the crime" as "the Middle District of Florida" was a sufficient allegation of venue); *see also United States v. Ruiz-Murillo*, 736 F. App'x 812, 818 (11th Cir. 2018) (per curiam); *United States v. Zarif*, No. 8:22-CR-392-TPB-AAS, 2023 WL 2837531, at *2 (M.D. Fla. Apr. 7, 2023).

In sum, Carbone fails to establish any basis for dismissing the indictment.

### B. Liburdi's First MTD

In his first motion, Liburdi seeks dismissal of the indictment for three reasons. First, he contends that the indictment charges him with defrauding a bank to obtain a service—as opposed to property—and, as such, the indictment fails to allege bank

12

fraud. First Liburdi MTD at 5–8. Second, he claims that the indictment is effectively duplicitous because it fails to specify whether he is charged with committing bank fraud under 18 U.S.C. § 1344(1) or (2). *Id.* at 8–9. Third, he maintains that because the indictment fails to allege bank fraud, both conspiracy charges should be dismissed. *Id.* at 9–11. None of these arguments carry the day.

Liburdi has not shown that the indictment fails to adequately charge bank fraud. On his view, the bank fraud statute, like other federal fraud statutes, prohibits "only schemes to deprive people of traditional property interests." First Liburdi MTD at 5 (emphasis omitted) (quoting *Ciminelli v. United States*, 598 U.S. 306, 309 (2023)). He contends that "payment processing services do not constitute a 'traditional property interest.'" *Id.* at 6 (emphasis omitted).

Liburdi misunderstands the nature of the scheme that the indictment alleges. The ultimate object of the scheme was not merely to obtain the merchant accounts—it was to process transactions through those accounts, thereby obtaining money from the accounts. *See* Indictment ¶ 29h ("It was a further part of the conspiracy that LIBURDI and others would and did use obtained merchant accounts to process credit and/ or debit card transactions purportedly relating to the sale of products for customers."). As described above, *see supra* at 2–3, the acquiring banks facilitate the

13

transfer of funds from card payment networks to merchants. Banks have property rights in the funds contained in their accounts, either as an owner proper or as a bailee. *See Shaw v. United States*, 580 U.S. 63, 66–67 (2016) (explaining that a "scheme fraudulently to obtain funds from a bank depositor's account normally is also a scheme fraudulently to obtain property from a 'financial institution' "). Read in the light most favorable to the government, *see Sharpe*, 438 F.3d at 1264, the indictment alleges a scheme to induce the acquiring banks to enter transactions with the defendants whereby the defendants would ultimately obtain money from merchant processing accounts with the acquiring banks. That is sufficient to allege bank fraud. *Cf. Kousisis v. United States*, 145 S. Ct. 1382, 1398 (2025) (explaining that the federal fraud statutes criminalize a scheme to obtain property from a victim even if the victim suffers no loss). The indictment thus states an offense.

Liburdi has also not shown that the conjunctive charging of 18 U.S.C. § 1344(1) and (2) renders the indictment duplicitous. As he acknowledges in his motions, the two subsections of the bank fraud statute enumerate different ways to commit bank fraud, not different offenses. *See* First Liburdi MTD at 8 (citing *United States v. Saintvil*, No. 22-10004, 2023 WL 3644976, at *5 (11th Cir. May 25, 2023), *cert. denied*, 144 S. Ct. 1067 (2024)); *see also United States v. Dennis*, 237

14

F.3d 1295, 1303 (11th Cir. 2001) ("Bank fraud is established under two alternative methods." (citing 18 U.S.C. § 1344(1), (2))). If a criminal statute enumerates several different ways to commit an offense, prosecutors are free to charge all those ways conjunctively. *See United States v. Howard*, 742 F.3d 1334, 1344 n.3 (11th Cir. 2014) ("Prosecutors can and frequently do . . . charge alternative elements in the conjunctive."); *United States v. Felts*, 579 F.3d 1341, 1344 (11th Cir. 2009) (per curiam) ("Courts have repeatedly held that 'where a statute defines two or more ways in which an offense may be committed, all may be alleged in the conjunctive in one count.'" (quoting *United States v. Bolden*, 325 F.3d 471, 487 n.20 (4th Cir. 2003))). The indictment is not duplicitous.[1]

---

[1] To the extent that Liburdi's argument is simply that there is a "lack of clarity as to which section Liburdi is charged with" (as opposed to duplicity), First Liburdi MTD at 8–9, a cursory reading of the indictment dispels any concern. Both substantive bank fraud counts track the language of both subsections of the bank fraud statute. *See* Indictment ¶ 31 (charging that Liburdi and Carbone "[1] did knowingly, and with intent to defraud, execute, and attempt to execute, a scheme and artifice to defraud one or more financial institutions, which scheme and artifice employed material falsehoods and omissions, and [2] to knowingly, and with intent to defraud, execute and attempt to execute, a scheme and artifice to obtain moneys, funds, credits, assets, and other property owned by, and under the custody and control of one or more financial institutions, by means of false and fraudulent pretenses, representations, promises and omissions relating to a material fact"); *see id.* ¶ 35 (same); 18 U.S.C. § 1344(1) and (2). Liburdi cannot reasonably claim that the Indictment does not put him on notice that he is charged under both subsections.

Last, Liburdi is wrong that the conspiracy counts must be dismissed for want of a sufficient charge of bank fraud. As explained above, the indictment adequately charges two counts of bank fraud against Liburdi.

Liburdi has thus not shown that the indictment must be dismissed.

### C. Liburdi's Second MTD

In his second motion, Liburdi moves to dismiss or, in the alternative, to strike the forfeiture allegations because "there is no nexus between the forfeiture and charges in the Indictment." Second Liburdi MTD at 1.

As the government notes, Liburdi cites no authority in support of his motion. *See* USA Resp. to Second Liburdi MTD (Doc. 73) at 2. And nothing in the Federal Rules of Criminal Procedure requires the government to plead a nexus at this stage. Federal Rule of Criminal Procedure 32.2 requires that the government give a defendant notice that it will seek forfeiture, but it provides that "[t]he indictment . . . need not identify the property subject to forfeiture or specify the amount of any forfeiture money judgment that the government seeks." FED. R. CRIM. P. 32.2(a). The Rule further explains that "the court must determine whether the government has established the requisite nexus between the property and the offense" "[a]s soon as practical after a verdict or finding of guilty, or after a plea of guilty or nolo

16

contendere is accepted." *Id.* 32.2(b)(1)(A). More, nothing in the forfeiture statute requires the government to allege a nexus at the pleading stage. *See* 18 U.S.C. § 982.

In the absence of any authority or argument in support of requiring the government to allege a nexus, I decline to strike the forfeiture allegations.

### D. Motions for Bills of Particulars

Carbone and Liburdi each seek a bill of particulars providing more details about the government's evidence and the charges against them.

I decline to order a bill of particulars. For one, both defendants' requests seek detailed information going far beyond what is necessary "to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy." *Davis*, 854 F.2d at 1293 (quoting *United States v. Warren*, 772 F.2d 827, 837 (11th Cir. 1985)). For example, Liburdi's motion seeks all "[t]he transactions facilitated by the relevant merchant accounts." Liburdi Mot. for BOP at 3. And Carbone's motion seeks broadly all "statements and acts that [he] undertook in furtherance of the scheme." Carbone Mot. for BOP at 6–7. These requests seek "a detailed disclosure of the government's evidence prior to trial," which is not an appropriate object of a bill of particulars. *Davis*, 854 F.3d at 1293 (quoting *United States v. Perez*, 489 F.2d 51,

17

71 (5th Cir. 1973)); *see also United States v. Colson*, 662 F.2d 1389, 1391 (11th Cir. 1981) ("[G]eneralized discovery is not a proper purpose in seeking a bill of particulars.").

At least Liburdi's request also seeks some information easily identifiable from the indictment. *See United States v. Dines*, No. 8:22-CR-78-KKM-MRM, 2022 WL 17340302, at *1 (M.D. Fla. Nov. 30, 2022) ("[A] defendant is not 'entitled to a bill of particulars where the information sought has already been provided by other sources, such as the indictment.'" (quoting *Davis*, 854 F.3d at 1293)). For example, Liburdi asks the government to identify the "specific statutory unlawful activity which produced the funds that are the subject matter of" the money laundering count. Liburdi Mot. for BOP at 4. The indictment states plainly that the defendants conspired to launder "the proceeds of specified unlawful activity, that is, bank fraud (18 U.S.C. § 1344)." Indictment ¶ 39.

More, as the parties acknowledged at the time of the motions' filings, the government had not yet turned over its discovery. *See* Carbone Mot. for BOP at 10; Liburdi Mot. for BOP at 5; *see also* FED. R. CRIM P. 16(a); USA Resp. to Mots. for BOP (Doc. 72) at 9–10 ("The United States[] is diligently preparing [discovery] materials to be produced under Rule 16 at the earliest opportunity."). While the

18

defendants protest that any discovery will be so voluminous that it will not put them not adequate notice or allow them to prepare their defenses, *see* Carbone Mot. for BOP at 10–12; Liburdi Mot. for BOP at 5, such concerns were speculative until the government had made its production. *Cf. United States v. Greenberg*, No. 6:20-CR-97-ORL-31LRH, 2020 WL 5441301, at *2 (M.D. Fla. Aug. 20, 2020) ("[C]ourts have denied motions for a bill of particulars where the defendant has received information through the discovery process, which remained open at the time the motion was filed."), *report and recommendation adopted*, No. 6:20-CR-97-ORL-31LRH, 2020 WL 5423676 (M.D. Fla. Sept. 10, 2020); *United States v. Williams*, No. 6:13-CR-26-ORL-36TBS, 2013 WL 12203173, at *1 (M.D. Fla. Aug. 22, 2013) ("[D]efendant is not entitled to a bill of particulars regarding information available through other sources, such as the indictment or discovery and inspection."), *report and recommendation aff'd*, No. 6:13-CR-26-ORL-36, 2014 WL 117091 (M.D. Fla. Jan. 13, 2014).

The defendants may, if necessary, renew their motions, in which they should explain in detail what information they seek and why it is "necessary for trial preparation." *Anderson*, 799 F.2d at 1441 (emphasis omitted); *see* FED. R. CRIM. P.

7(f) ("The defendant may move for a bill of particulars . . . at a later time if the court permits.").

## IV. CONCLUSION

Neither Carbone nor Liburdi have shown that the indictment must be dismissed. Nor have they shown that a bill of particulars is appropriate. Accordingly, the following is **ORDERED:**

1. Frank Carbone, III's Motion to Dismiss (Doc. 62) is **DENIED.**

2. Daniel Liburdi's First Motion to Dismiss (Doc. 65) is **DENIED.**

3. Daniel Liburdi's Second Motion to Dismiss (Doc. 66) is **DENIED.**

4. Frank Carbone, III's Motion for a Bill of Particulars (Doc. 63) is **DENIED WITHOUT PREJUDICE.**

5. Daniel Liburdi's Motion for a Bill of Particulars (Doc. 67) is **DENIED WITHOUT PREJUDICE.**

ORDERED in Tampa, Florida, on August 22, 2025.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge